# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NOLAN KINARD FLOYD, SR.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-21-2403** |
| **LT. ADEBAYO ADEJUMO, et al.,** | * | |
| **Defendants.** | * | |

## MEMORANDUM

Plaintiff Nolan Kinard Floyd, Sr., who is incarcerated at North Branch Correctional Institution and is proceeding without counsel, filed suit for damages pursuant to 42 U.S.C. § 1983 against Lt. Adebayo Adejumo, Assistant Warden Nurudeen Matti, and Chief of Security Michelle Mann. ECF 1, 9. Floyd alleges that on May 31, 2019, Lt. Adejumo placed him in disciplinary segregation without issuing an institutional rule violation. ECF 1, at 2. Floyd further alleges that the defendants then kept him in segregation for 60 days and failed to respond to the grievances he filed. ECF 9, at 3–4. Additionally, he alleges that he was housed in disciplinary segregation from December 28, 2019 to July 15, 2021. ECF 1-1, at 8. He claims these actions violated his Fourteenth Amendment rights to procedural due process and freedom from cruel and unusual punishment. ECF 1, at 3–4; ECF 9, at 3. The defendants move to dismiss or, in the alternative, for summary judgment. ECF 27. Floyd opposes the motion.[1] ECF 31. No hearing on the motion

---

[1] On March 8, 2023, Floyd asked the Court to confirm that it received the $400 he submitted to pay the filing fee. ECF 32. The Court received his check on February 25, 2022. However, as Floyd was granted in forma pauperis status on February 9, 2022, under the Prison Litigation Reform Act, the filing fee is only $350. Therefore, the Clerk will return $50 to Floyd.

is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, the defendants'

motion is granted.

## I. Background

Floyd, who was a pretrial detainee in Building B at Jessup Correctional Institution ("JCI"),

states that on the morning of May 31, 2019, Lt. Adejumo removed him from his general population

cell on D-Tier and placed him in solitary confinement in a disciplinary cell on B-Tier without

issuing a rule violation.  ECF 1, at 2–3; ECF 1-1, at 1; *see* ECF 27-2, at 4.  Floyd states that several

officers had searched his cell looking for a necklace that Floyd no longer had.  ECF 31, at 1.  Even

though they did not find any contraband in his cell, they informed him that they had "orders to

transport [him] to lock-up."  *Id.* at 2.  None of the officers gave Floyd a reason for the transfer.  *Id.*

Lt. Adejumo kept Floyd in the disciplinary cell for 60 days without explanation or "administrative

advisement."  ECF 1, at 3.  According to Floyd, Lt. Adejumo did so with evil intent and without

any logical purpose.  *Id.* at 4.  Floyd also alleges that he was housed in disciplinary segregation

from December 28, 2019 to July 15, 2021.  ECF 1-1, at 8.  He complains that inmates on

segregation "only receive three showers a week, and three phone calls," and their recreation is

limited to "three times a week with shackles on their feet and chains around their waist for a[n]

hour."  *Id.*  Floyd also states that Assistant Warden Matti is responsible for operations and Chief

Mann is responsible for security operations at JCI and therefore responsible for Floyd's welfare

and security.  ECF 9 at 2, 3–4.  Floyd seeks monetary compensation.  *Id.* at 5.

Lt. Adejumo asserts that JCI does not have solitary or isolation confinement, but it does

have administrative segregation to house inmates "requiring close supervision or segregation from

general population or both."  ECF 27-3, at 1 ¶¶ 4–5.  Inmates are placed in administrative

segregation in response to possible threats to safety or security and "if there is reason to believe such placement will reduce the threat." *Id.* at 1 ¶ 5.

Lt. Adejumo states that, on April 22, 2019, he interviewed Floyd about his association with a Security Threat Group, the Crips, at JCI. ECF 27-3, at 1 ¶ 6. Floyd acknowledged that he is an active member but refused to sign a self-admission form. *Id.* at 1 ¶ 6; *id.* at 7. Floyd has 14 known enemies across Maryland state prisons. ECF 27-2, at 9. Additionally, while incarcerated, he has received numerous rule violations. *Id.* at 10–11. On May 31, 2019, Floyd was moved to administrative segregation because he "was being very disruptive" and posed a threat to staff on his tier; Floyd claimed to be having family problems and would not listen to staff. ECF 27-3, at 2 ¶ 7. Lt. Adejumo recommended Floyd see a psychologist and remain in segregation pending an intelligence investigation. *Id.* at 2 ¶ 7; *id.* at 9 (June 5, 2019 Admin. Seg. Investigative Report).

On the morning of June 14, 2019, Lt. Adejumo and Intelligence Officer Ibrahima Keita conducted a random cell search of Floyd's cell. ECF 27-3, at 2 ¶ 8. Beneath his bunk, several "blunts of brown smoked paper" and a six-inch homemade knife were discovered. *Id.* Floyd then remained in administrative segregation pending adjustment. *Id.* He received a notice of inmate rule violation for possession, use, or manufacture of a weapon and possession or passing of contraband. *Id.* at 13.

On December 28, 2019, Lt. Adejumo was the Officer in Charge in the JCI Visiting Room where he witnessed a verbal altercation between Floyd and a female visitor. ECF 27-3, at 2 ¶ 9; *id.* at 3–5. Lt. Adejumo terminated the visit, and while being removed from the visiting room, Floyd threatened to kill Lt. Adejumo multiple times. *Id.* Floyd was escorted back to his housing unit, and at Lt. Adejumo's instruction, Intelligence Officer Keita searched his cell for weapons before Floyd entered. *Id.* Lt. Adejumo was later notified of an officer assault incident involving

Floyd.  *Id.*  A search of his cell recovered K2 papers, which Lt. Adejumo states are "papers laced with suspected controlled dangerous substances," along with several "blunts of brown smoked paper."  *Id.*  Floyd received a notice of inmate rule violation for possession or passing of contraband.  *Id.* at 21.

## II.  Standard of Review

The defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment.  Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39

F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).  But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).

When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Floyd that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 28. Moreover, the defendants' motion, which identifies summary judgment as possible relief, provided sufficient notice for Floyd to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). In response, Floyd filed a declaration in opposition to the defendants' motion. ECF 31. Thus, the Court is satisfied that Floyd has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion, in part, under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.  The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    Discussion

### A.  Official Capacity Claims

The defendants assert that they are immune from claims against them in their official capacities under the Eleventh Amendment.  ECF 27-1, at 12–13.  "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

Even if the State does not consent, Eleventh Amendment immunity does not bar suit: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).  The first exception, abrogation by Congress, does not apply here.  Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court.  *See Will*, 491 U.S. at 66.  The second exception does not apply because Floyd does not seek prospective injunctive relief.

Thus, Floyd's claims against the defendants in their official capacities are barred by the Eleventh Amendment and are dismissed without prejudice.

### B.  Personal Participation and Supervisory Liability

Defendant Matti, the Assistant Warden, and Mann, the Chief of Security, contend that the claims against them should be dismissed because Floyd fails to allege that either of them personally participated in violating his constitutional rights.  ECF 27-1, at 11.  Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

A defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928

(4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at

782.  Officials like Matti and Mann may be found liable only if the plaintiff shows the official

"acted personally in the deprivation of the plaintiff['s] rights."  *Vinnedge*, 550 F.2d at 928 (quoting

*Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

To state a claim for supervisory liability under § 1983 based on a subordinate's conduct,

the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that

subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens

like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed

"deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was

"an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional

injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238,

257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Floyd seeks to hold Matti and Mann responsible based on their supervisory positions

and their general responsibility as supervisors for his wellbeing and operation of the prison.  ECF

9, at 3–4.  But he does not allege that they personally participated in any violation of his

constitutional rights.  Nor does he allege that Matti and Mann knew that Lt. Adejumo's alleged

conduct posed an unreasonable risk of constitutional injury to Floyd, that they failed to respond to

the risk, or that there was a causal link between their inaction and his injury.  Accordingly, Floyd's

claims against Matti and Mann are dismissed.

### C.  Due Process

Floyd alleges Lt. Adejumo violated his procedural due process rights by placing him in

disciplinary segregation without issuing an institutional rule violation, keeping him in solitary

confinement in the disciplinary cell for 60 days without explanation or "administrative

advisement," and later keeping him in disciplinary segregation for almost 19 months   ECF 1, at 2–3; ECF 1-1, at 8.   To decide this claim, the Court considers the evidence both parties have submitted, which converts the motion to dismiss the due process claim into a motion for summary judgment.   Lt. Adejumo is entitled to judgment as a matter of law on the due process claim.

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.   To prevail on a due process claim, a plaintiff first must establish the existence of a property or liberty interest for which "procedural protections are due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).   Then, the plaintiff must show the defendants deprived him of that interest without providing him with the protections he was due. *Id.*   Imprisonment does not deprive a prisoner of a protected liberty interest unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222–24 (2005) (quoting *Sandin*).   The comparison of the challenged conditions to "those [a prisoner] could expect to experience as an ordinary incident of prison life necessarily is fact specific," but "whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997).   "[E]ven when an institutional restriction impinges a specific constitutional guarantee, . . . the practice must be evaluated" with great deference to the prison administrators' decisions and with "the central objective of prison administration, safeguarding institutional security," in mind. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

"[A] pretrial detainee's procedural protections vary according to whether a restriction was imposed for disciplinary or administrative purposes." *Hobbs v. Baltimore Cnty.*, No. ELH-21-2052, 2023 WL 4593300, at *10 (D. Md. July 18, 2023).   "Prison disciplinary proceedings are not

part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Still, before a disciplinary restriction is imposed, a pretrial "detainee is entitled to notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision."  *Hobbs*, 2023 WL 4593300, at *10 (citing *Dilworth v. Adams*, 841 F.3d 246, 252–54 (4th Cir. 2016)).

> If, however, a restriction imposed by the jail officials is for administrative purposes — which include managerial and security needs — the level of process to which the pretrial detainee is entitled is diminished. In those situations, the courts of appeals have generally concluded that some level of process must be afforded to the pretrial detainee, even if the process is provided after the restriction has been imposed.

*Id.* (citing *Dilworth*, 841 F.3d at 255 and noting *Dilworth* Court "explain[ed] that jail may take 'immediate preventative action' for security reasons but process must subsequently be provided"); *see Halcomb v. Ravenell*, 992 F.3d 316, 322 (4th Cir. 2021) (noting that, although earlier Fourth Circuit decisions make "clear . . . that inmates are entitled to *some* level of procedural protection, none of those cases definitively require[s] prior notice of administrative segregation hearings").

Assignment to administrative segregation does not, in and of itself, impose an atypical and significant hardship.  *See Sandin*, 515 U.S. at 485 (finding no liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"); *Beverati*, 120 F.3d at 504 (finding six-month period in administrative segregation was not so atypical that it implicated a liberty interest). To determine whether, under the facts of a case, administrative segregation imposes an atypical and significant hardship, the court considers "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence."  *Incumaa v. Stirling*, 791 F.3d 517, 531–32 (4th Cir. 2015), *as amended* (July 7, 2015) (finding liberty

interest where the appellant's "20-year stint in highly restrictive solitary confinement" was "extraordinary in its duration and indefiniteness").

The unrefuted evidence shows that Floyd was placed in administrative segregation, not disciplinary segregation or solitary confinement.  ECF 27-2, at 3–4; ECF 27-3, at 2, ¶¶ 7–8; ECF 27-3, at 3–5, 8–9.  Administrative segregation is "used to ensure the safety and security of the institution, staff, individual inmates, the general inmate population, or some combination of those factors."  ECF 27-3, at 1 ¶ 5.  Thus, "an inmate may be placed in Administrative Segregation in response to a potential threat to the safety, security, and good order of the institution, and if there is a reason to believe such placement will reduce the threat."  *Id.*  Floyd was placed in administrative segregation on May 31, 2019 and remained there on June 14, 2019 because he "was being very disruptive" and posed a threat to staff on his tier.  *Id.* at 2 ¶ 7; *id.* at 3, 9.  On December 28, 2019, Floyd was aggressive and violent, and on May 16, 2020, Lt. Adejumo recommended that Floyd remain on administrative segregation because he had repeatedly been disruptive and posed a threat to staff and security.  *Id.* at 3–5, 8.  Regardless of whether the particular conditions of Floyd's confinement on administrative segregation imposed an atypical hardship—of which there is no evidence—Floyd was not entitled to notice or a hearing before his assignment to administrative segregation under the facts of this case.  *See Halcomb*, 992 F.3d at 322; *Dilworth*, 841 F.3d at 255; *Hobbs*, 2023 WL 4593300, at *10.  And, as proof of process, the defendants filed unsigned June 14, 2019 and January 2, 2020 notices of inmate rule violation and notices of inmate disciplinary hearing.  ECF 27-3, at 13–14, 17–22.  Floyd filed a declaration in response to the defendants' motion, but he did not challenge the authenticity of these notices or otherwise show that he was not provided due process after he was assigned to administrative segregation.  Thus,

the defendants have shown that Floyd received the procedural protections he was due.  *See Morrissey*, 408 U.S. at 481.  Therefore, the motion for summary judgment is granted on this claim.

### D.  Cruel and Unusual Punishment

Floyd claims his time on administrative segregation amounted to cruel and unusual punishment. Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  To prevail on a § 1983 claim based on unconstitutional conditions of confinement, a prisoner or pretrial detainee must prove "two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind."  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.)) (internal alterations omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"  *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  To show that the conditions amount to "extreme deprivation[ ]," the prisoner "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions."  *Id.* (quoting *Strickler*, 989 F.2d at 1381; citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

Floyd complains that inmates on segregation "only receive three showers a week, and three phone calls," and their recreation is limited to "three times a week with shackles on their feet and chains around their waist for a[n] hour."  ECF 1-1, at 8.  He states he "developed a hernia while exercising under these circumstances."  *Id.*  Floyd does not allege that the conditions on administrative segregation caused a serious injury or put him at risk of a serious injury.  Nor does he allege the defendants knew that he was at risk of serious injury.  His claim against the defendants for cruel and unusual punishment is dismissed without prejudice.[2]

## IV.    Conclusion

By separate Order that follows, the defendants' motion to dismiss or, alternatively, for summary judgment, ECF 27, is granted.

August 31, 2023
_____                          _____
Date                                       Deborah L. Boardman
                                           United States District Judge

---

[2] Floyd also mentions speedy trial rights, double jeopardy, excessive bail, and the Thirteenth Amendment, and he asserts that, in retaliation for his complaints, "money has been stolen from out [of his] account."  ECF 1-1, at 2–3, 8–9.  Insofar as he intended to bring claims based on violations of these constitutional provisions or retaliation, his conclusory assertions do not notify the defendants of the claims against them or show that he has a plausible right to relief from the Court.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021). Any claims under other constitutional provisions or for retaliation are dismissed without prejudice.